**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 24-cv-61121-DAMIAN**

**JUSTIN MASSE,**

      Plaintiff,

v.

**MSC CRUISES, S.A.,**

      Defendant.

_____/

**ORDER GRANTING DEFENDANT'S MOTION**
**FOR SUMMARY JUDGMENT [ECF NO. 18]**

**THIS CAUSE** is before the Court on Defendant, MSC Cruises, S.A.'s ("Defendant" or "MSC"), Motion for Summary Judgment or in the Alternative Summary Adjudication, filed April 1, 2025 [ECF No. 18 (the "Motion")].

THE COURT has reviewed the Motion, the Response [ECF No. 23] and Reply [ECF No. 26], as well as the parties' statements of material facts [ECF Nos. 19, 23-2, and 27], the record, and the applicable law, and is otherwise fully advised.

This case involves an injury on a cruise ship. Plaintiff, Justin Masse ("Plaintiff" or "Masse"), was injured when he fell (or jumped) from his stateroom balcony to a deck seven stories below. Masse claims MSC was negligent because, generally, it overserved him alcohol which ultimately led to his injuries. MSC avers, generally, that it is entitled to judgment as a matter of law because it did not breach any duty owed to Masse, who was, at the time of the fall, heavily intoxicated (and had other narcotics in his system). For the reasons that follow, this Court finds that Defendant's Motion is due to be granted.

# I.    BACKGROUND

Masse, who was 25 years old at the time of the incident at issue, was a passenger aboard the MSC cruise ship *Meraviglia* for a cruise which began in late November 2023. *See* ECF No. 1.[1] Masse purchased the "Easy Plus" drink package from MSC, meaning that he had unlimited access to the many types of alcoholic beverages available aboard the *Meraviglia*. *Id.* On December 1, 2023, Masse consumed a large quantity of alcohol, continuing into the early morning of December 2nd, and became intoxicated. *Id.* Masse states that he fell asleep at dinner and was "swaying" or "staggering" down the hallways,[2] but he otherwise displayed no other signs of intoxication. *See* ECF No. 23-2. The record evidence suggests Masse was served somewhere around 40 standard alcoholic drinks during the 24-hour period prior to his injury. *See id.* at 2-4. However, MSC asserts that it is not clear how many of these 40 drinks were consumed by Masse himself, by his girlfriend, or by others, *see* Mot. at 4 n.4, as Masse testified that he was with his girlfriend, her sister, and his cousin during the time the drinks were served. *See* ECF No. 20-1 at 63.) According to Masse, when he "drinks alcohol, he tends to drink to excess" and "will occasionally black out." *See* 23-2 at 4.

At some point in the early morning of December 2nd, Masse was discovered, injured, on the deck of the vessel, some seven stories below the balcony connected to his stateroom—meaning that he either jumped or fell down from his balcony. *Id.* According to Masse, he has "no recollection of how he got over the balcony railing," except that "[t]he last thing [he] was thinking about was jumping off the balcony and landing on [a] lifeboat." *See* ECF No. 23-2

---

[1] Although the Court here cites some facts as alleged in the Complaint, in this section, the Court only cites facts from the Complaint that are not disputed by MSC. *See* Mot.

[2] Defendant argues this would not necessarily have evidenced that Masse was intoxicated.

at 5. Notably, it is undisputed that the railings on Plaintiff's balcony exceeded the required safety height for balcony railings. *See* ECF Nos. 19 at 6; 23-2 at 1.

Fortunately, Masse survived the fall. Although he sustained some injuries, the seriousness of these injuries is not clear from the record. After MSC employees discovered Masse on the deck, MSC treated him in its own medical facilities before transferring him to New York Presbyterian Brooklyn Methodist Hospital (the "Hospital") for further treatment and recovery. *See* Mot. A few hours later, while at the Hospital, Masse underwent a blood draw at 8:05 a.m. which reflected a blood alcohol concentration of 0.152.[3] *See* ECF 23-2 at 5.

Masse also testified at his deposition that he smoked marijuana throughout the cruise and, in particular, during the day at some point before dinner on December 1st. *See* ECF No. 20-1 at 77–79. While at the Hospital, Masse also screened positive for cannabinoids and for fentanyl from a urine sample taken on December 2nd. *See* ECF No. 27-1 at 2.

## II.   PROCEDURAL HISTORY

On June 27, 2024, Masse filed the Complaint, in which he asserts a single claim of negligence against MSC. [ECF No. 1]. In the Complaint, Masse alleges that MSC "encouraged over-serving of alcohol on its ships for financial gain, without regard to the fact that it resulted in injuries and accidents" and that MSC "did not make any meaningful steps to enforce a reasonable alcohol policy since it would have resulted in less money." *Id.* ¶ 15. Masse alleges that MSC owed him, as a passenger of the *Meraviglia*, a duty of reasonable care at all times, but that MSC breached that duty by, generally, overserving him alcoholic

---

[3] As a comparative reference, the legal limit for impaired driving in Florida is a blood alcohol concentration of 0.08; meaning that, some 6 hours after his last drink, Masse's blood alcohol concentration was almost twice the legal limit for driving a car.

beverages and not having policies in place to stop serving intoxicated passengers in order to protect them from harm. *Id.* ¶ 21. Masse further alleges that as a result of MSC's negligence, MSC "caused or allowed [Masse] to climb on the ship's railing and fall seven stories after he was served an excessive amount of alcohol" by either creating the dangerous condition, having actual knowledge of it, or having constructive knowledge of it. *See id.* ¶¶ 22–23.

Following discovery, on April 1, 2025, MSC filed the Motion now before the Court in which it moves for summary judgment as to the sole count of the Complaint. In the Motion, MSC argues, generally, that the balcony railing met or exceeded all applicable safety regulations; that Masse contractually agreed that he alone would be responsible for his alcohol consumption (and that he conceded during his deposition that he in fact was the only one responsible); that Florida's dram shop law applies to any injuries; that Masse admits others would not have been able to detect that he was intoxicated; that Masse watched MSC's safety video which warned passengers against climbing on the ship's railings; and that Masse cannot prove causation because (i) he does not know whether he jumped or fell, and (ii) he was also under the influence of illegal drugs at the time of the fall. *See generally* Mot.[4]

In response, Masse argues that MSC violated its own contract for passage (and its employee Bar Service Manual) by serving more than one drink at a time; that MSC created the dangerous condition; and that MSC may not enforce the Florida dram shop statute in this maritime case. *See generally* Response.

In reply, MSC reiterates that Masse contractually absolved MSC of the legal duty to control his drinking; that the terms and conditions of the "Easy Plus" drink package are valid

---

[4] MSC also argues that the balcony railing met or exceeded applicable cruise ship construction standards. Masse appears to concede this point by failing to rebut it or even address it aside from responding "undisputed" to the factual assertion.

and enforceable; that the authorities relied upon by Masse are distinguishable; that MSC did not violate its passage contract or Bar Service Manual; and that Masse has offered no evidence that MSC's bartenders knew or could have known that he was under the influence of marijuana and fentanyl. *See generally* Reply.

### III.    APPLICABLE LEGAL STANDARD

#### A. Summary Judgment.

Summary judgment is appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(a). Genuine issues of material fact exist when "a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). All factual inferences must be considered in a light most favorable to the non-moving party. *Denney v. City of Albany*, 247 F.3d 1172, 1181 (11th Cir. 2001).

The movant has the initial burden of showing that genuine issues of material fact do not exist. *See Clark v. Coats & Clarks, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). The movant "may carry its burden of showing no genuine issue of material fact by showing 'an absence of evidence to support the nonmoving party's case.'" *Guevara v. NCL (Bahamas) Ltd.*, 920 F.3d 710, 723 (11th Cir. 2019) (quoting *Celotex Corp.*, 477 U.S. at 325). Once the moving party has met its burden, the burden shifts to the non-moving party to come forward with evidence showing genuine issues of material fact. *See Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1243 (11th Cir. 2002). "[I]f the record, taken as a whole, cannot lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial, and summary judgment is proper." *Lugo*

*v. Carnival Corp.*, 154 F. Supp. 3d 1341, 1344 (S.D. Fla. 2015) (Moore, J.) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

### B. Negligence Claims Under Federal Maritime Law.

Federal maritime law governs this case because the alleged tort occurred aboard a ship on navigable waters. *Everett v. Carnival Cruise Lines*, 912 F.2d 1355, 1358 (11th Cir. 1990); *Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1320–21 (11th Cir. 1989). In analyzing a maritime tort case, courts "rely on general principles of negligence law." *Guevara*, 920 F.3d at 720 (internal quotations omitted). To prevail on a maritime negligence claim, a plaintiff must show that "(1) the defendant had a duty to protect the plaintiff from a particular injury; (2) the defendant breached that duty; (3) the breach actually and proximately caused the plaintiff's injury; and (4) the plaintiff suffered actual harm." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1336 (11th Cir. 2012). This standard "requires, as a prerequisite to imposing liability, that the carrier have had actual or constructive notice of the risk-creating condition, at least where, as here, the menace is one commonly encountered on land and not clearly linked to nautical adventure." *Keefe*, 867 F.2d at 1322. Thus, "a cruise ship operator's liability," with respect to a menace that is not unique to the sea, hinges on whether it knew or should have known "about the dangerous condition." *Id*. "The facts of the case must be such that a "reasonable defendant would have been on notice of the impending danger to the plaintiff." *Doe v. Royal Caribbean Cruises, Ltd.*, No. 11-23323-CIV, 2011 WL 6727959, at *4 (S.D. Fla. Dec. 21, 2011) (Goodman, Mag. J.).

Therefore, "a shipowner's actual or constructive knowledge of the hazardous condition arises as part of the duty element in a claim seeking to hold the shipowner directly liable for its own negligence." *Cole v. Carnival Corp.*, No. 23-60532-CIV, 2024 WL 2229991,

at *3 (S.D. Fla. May 17, 2024) (Damian, J.). "Actual notice exists when the defendant knows of the risk creating condition." *Bujarski v. NCL (Bahamas) Ltd.*, 209 F. Supp. 3d 1248, 1250 (S.D. Fla. 2016) (Otazo-Reyes, Mag. J.). "Constructive notice arises when a dangerous condition has existed for such a period of time that the shipowner must have known the condition was present and thus would have been invited to correct it." *Id.* (citation omitted). "Alternatively, a plaintiff can establish constructive notice with evidence of substantially similar incidents in which conditions substantially similar to the occurrence in question must have caused the prior accident." *Newbauer v. Carnival Corp.*, 26 F.4th 931, 935 (11th Cir. 2022) (citing *Jones v. Otis Elevator Co.*, 861 F.2d 655, 661–62 (11th Cir. 1988) (internal quotations omitted)).

With respect to allegations of over-service of alcohol, "[m]ere notice that a passenger is intoxicated, however, may not always be sufficient to put a defendant on notice that the passenger is in serious danger." *Doe v. NCL (Bahamas) Ltd.*, No. 11-22230-CIV, 2012 WL 5512314, at *3 (S.D. Fla. Nov. 14, 2012) (Cooke, J.) (citing *Doe v. Royal Caribbean Cruises, Ltd.*, No. 11-23323-Civ, 2011 WL 6727959, at *4 (S.D. Fla. Dec. 21, 2011) (Goodman, Mag. J.)).

## IV.   DISCUSSION

### A.   *Masse's Complaint Is An Impermissible Shotgun Pleading.*

At the outset, although not raised by MSC, this Court cannot ignore that the Complaint, which includes a single count of negligence, constitutes a shotgun pleading in that it "commits the sin of not separating into a different count each cause of action or claim for relief." *Weiland v. Palm Beach Cnty. Sherriff's Office*, 792 F.3d 1313, 1323 (11th Cir. 2015). That is, in the Complaint's single claim for negligence, Masse broadly asserts that MSC owed him

a duty of reasonable care, and he claims MSC breached its duty in eighteen ways. *See* Compl. ¶¶ 19–21. Masse further claims that as a result of its breaches, MSC "caused or allowed [Masse] to climb on the ship's railing and fall seven stories after he was served an excessive amount of alcohol." *Id*. ¶ 22.

Masse's sole negligence claim constitutes a shotgun pleading for at least two reasons. First, the claim "epitomizes a form of 'shotgun' pleading'" in that it alleges eighteen separate ways in which MSC allegedly breached its duty of care. *See Garcia v. Carnival Corp.*, 838 F. Supp. 2d 1334, 1337, n.2 (S.D. Fla. 2012) (Moore, J.) (dismissing maritime negligence claim where the plaintiff alleged that the cruise ship owed a duty of "reasonable care under the circumstances," and then "proceed[ed] to allege at least twenty-one ways in which [the cruise ship] breached this duty") (citing *Ebrahimi v. City of Huntsville Bd. of Educ.*, 114 F.3d 162, 164 (11th Cir. 1997)). Second, Masse's claim combines negligence allegations based on direct negligence against MSC with allegations of negligence based on vicarious liability for the acts of MSC's employees. "Pleading a direct negligence claim together with a vicarious liability claim . . . is improper, confusing and violates Rule 10(b)." *Lawing v. Carnival Corp.*, No. 24-cv-22101, 2024 WL 4723114, at *5 (S.D. Fla. Nov. 8, 2024) (Bloom, J.) (citing *Wohlford v. Carnival Corp.*, No. 17-cv-20703, 2017 WL 7731225, at *3 (S.D. Fla. May 11, 2017) (Ungaro, J.)).

"Courts in the Eleventh Circuit have little tolerance for shotgun pleadings." *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1294–95 (11th Cir. 2018). They violate Federal Rules of Civil Procedure 8(a)(2) and 10(b), "waste scarce judicial resources, inexorably broaden the scope of discovery, wreak havoc on appellate court dockets, and undermine the public's respect for the courts." *Id.* (cleaned up). As relevant here, shotgun pleadings include those where a

complaint fails to "separate[ ] into a different count each cause of action or claim for relief." *Weiland*, 792 F.3d at 1322-23, n.13.

In the Complaint, Masse attempts to fit multiple distinct theories of liability into the single "negligence" count. Each distinct theory, however, is a separate cause of action that must be asserted independently and with corresponding supporting factual allegations. *See, e.g.*, *Gayou v. Celebrity Cruises, Inc.*, No. 11-23359-Civ, 2012 WL 2049431, at *5–6, n.2 (S.D. Fla. June 5, 2012) (Scola, J.) (ordering plaintiff to amend complaint to "separately allege an independent count" for various theories of liability that were lumped into a single maritime negligence claim); *Ciethami v. Celebrity Cruises, Inc.*, 207 F. Supp. 3d 1345, 1349–50 (S.D. Fla. 2016) (Williams, J.) (holding that maritime negligence claim failed Rule 8(a), where the plaintiff's "shotgun-style recitation[ ]" of "34 breaches of duty," "without any factual context," makes "any meaningful assessment of her claims difficult"); *Gharfeh v. Carnival Corp.*, No. 17-20499, 2018 WL 501270, at *3, *6-7 (S.D. Fla. Jan. 22, 2018) (Goodman, Mag. J.) (dismissing maritime negligence count that "improperly commingles claims" as an "impermissible shotgun pleading").

The task of reviewing the Motion for Summary Judgment now before this Court is particularly difficult because MSC is attempting to assert bases for judgment as a matter of law directed at a myriad of theories of liability. In particular, direct liability and vicarious liability are distinct concepts, and as discussed above, Masse has improperly tried to blend them into a single theory of liability against MSC.

Nevertheless, at this stage of the proceedings, the time for the striking of a complaint has passed, and MSC never moved for such relief. Therefore, this Court will not *sua sponte* convert MSC's Rule 56 motion into a Rule 12 one or grant relief that was not requested. *See*

*Blue Cross & Blue Shield of Ala. v. Sanders*, 138 F.3d 1347, 1354 (11th Cir. 1998) (noting "we will not decide whether the plaintiff failed to state a claim unless the defendant preserved that defense in the district court pursuant to Fed. R. Civ. P. 12(h)(2).") (citations omitted); *McGinnis v. Ingram Equip. Co.*, 918 F.2d 1491, 1494 (11th Cir. 1990) (en banc) (finding a boilerplate assertion of a defense to have been abandoned when not raised in any motion).

### B.    Masse's Claim(s).

In the Complaint, Masse alleges MSC is liable based on its own negligence and based on the negligence of its employees and agents. However, Masse does not identify any specific crewmember whose negligence caused his injury, much less a specific crewmember whose negligence occurred while acting within the scope of his or her employment—essential parts of any claim seeking to impose vicarious liability on an employer for an employee's negligence. *See Yusko v. NCL (Bahamas), Ltd.*, 4 F.4th 1164, 1170 (11th Cir. 2021) (explaining that if a plaintiff cannot "identify any specific employee whose negligence caused her injury" that such a plaintiff is "limited to a theory of direct liability"). Masse instead alleges that MSC owed him "a duty of reasonable care at all times that he was a passenger aboard the MSC Meraviglia," (Compl. ¶ 19), that MSC "by and through its agents, servants, and/or employees who were acting within the course and scope of their employment or agency, were negligent" (*id*. ¶ 20), and that MSC "[c]reated the dangerous conditions that caused [Masse's] fall[,] [h]ad actual knowledge of the dangerous conditions that caused [Masse's] fall[,] and/or [h]ad constructive knowledge of the dangerous conditions that caused [Masse's] fall[.]" *Id*. ¶ 23.

Some of those allegations are not relevant to a claim based on vicarious liability, but they are relevant to a claim based on MSC's direct liability for its own negligence. Notably, Masse focuses his arguments in his Response on MSC's actual or constructive notice of the

allegedly dangerous condition—his intoxication—but these allegations are only relevant to a claim seeking to hold MSC *directly* liable for its own negligence.

In sum, the Complaint is presently defectively pled, and review of it for purposes of considering MSC's Motion is administratively burdensome. Nevertheless, this Court has taken the time to review each and every one of Masse's pled theories and evaluate whether *any* of these theories could possibly present a triable issue of material fact. Based on a review of the Complaint, the theories of liability advanced by Masse can be grouped into several categories, each of which the Court addresses below. Specifically, Masse's theories of liability fall within three general categories: (1) vicarious liability for the overservice of alcohol, (2) direct liability for the overservice of alcohol, and (3) direct liability relating to the construction of the balcony railing.

Each of these categories is discussed below.

### C.      *MSC's Motion.*

In the Motion for Summary Judgment, MSC argues it is entitled to judgment as a matter of law on four grounds: (1) the balcony railing met or exceeded safety regulations and was identical to those found on other ships on which Masse previously sailed; (2) Masse's claims based on alcohol consumption are barred by Florida Statutes Section 768.125 (the reverse "dram shop" act), by the terms of Masse's passage contract, and by MSC's booking terms and conditions; (3) MSC did not and could not have known Masse was intoxicated; and (4) MSC warned Masse of the danger of climbing on the ship's railings and made sure the railings met or exceeded applicable safety regulations. *See generally* Mot.

1. <u>Masse Abandoned Any Claims Based On The Safety Of The Balcony Railing.</u>

In the Response to the Motion for Summary Judgment, Masse does not respond to or address MSC's arguments regarding the safety of the balcony railings.

Thus, at the outset, because Masse failed to respond to MSC's arguments based on the safety of the balcony railing, those claims are deemed abandoned. *See B & D Nutritional Ingredients, Inc. v. Unique Bio Ingredients, LLC*, 758 F. App'x 785, 790 (11th Cir. 2018) ("[G]rounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned."); *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) (noting "the law is by now well settled in this Circuit that a legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed"). As a result, this Court need not consider MSC's arguments as to Masse's abandoned claims. Having abandoned these claims, Masse has not demonstrated that there is any genuine issue of material fact regarding the safety of the railing, and, therefore, MSC's Motion for Summary Judgment is due to be granted insofar as Masse's negligence claim is based on the safety of the balcony railing.

2. <u>Whether Masse's Claims Are Barred By The Passage Contract, The Booking Terms and Conditions, Or Florida's Dramshop Law.</u>

MSC argues that Masse's claims regarding his consumption of alcohol are barred by Florida Statute Section 768.125 (the "reverse dramshop law"), by his passenger contract, and by MSC's Booking Terms and Conditions. Specifically, MSC argues that Masse contractually absolved MSC of the legal duty to control his alcohol consumption and assumed that duty himself based on the terms and conditions of the Passage Contract and Booking Terms and Conditions signed by Masse before boarding the ship. *See* Mot. at 5–7. According to MSC,

these documents formed a contract between Masse and MSC pursuant to which Masse agreed to be solely responsible for monitoring his alcohol consumption and to absolve MSC of any liability to Masse based on his consumption of alcohol. MSC further alleges that Florida's reverse dramshop law applies to also absolve MSC of liability based on Masse's alcohol consumption. *Id*.

Masse responds that MSC is picking only select contractual provisions and ignoring others that indicate that MSC violated its contractual duties owed to Masse. Resp. at 6. Masse argues that pursuant to the terms and conditions of the "Easy Plus" beverage package, MSC had a duty to only serve one drink at a time to Masse and that, as a result of serving him multiple drinks at a time, MSC breached that duty and created a dangerous condition. Resp. at 6–8. Masse further contends that all alcohol consumption on the cruise ship was controlled by MSC because "they were in sole control over how alcohol was disbursed to passengers." *Id*. at 7. Masse also points to MSC's Bar Service Manual, which indicates that a guest may order only for himself or herself and only one drink at a time, and argues that MSC's employees violated the policy when serving Masse during the period leading to his fall. *Id*. at 8-9. And Masse argues that Florida's dramshop law does not apply.

In its Reply, MSC maintains that Masse has not cited any authority releasing him from his own duty, formed in the Passage Contract and the Booking Terms and Conditions, to monitor his own alcohol consumption and his express waiver of MSC's liability resulting from Masse's alcohol consumption.

### *Waiver Based On Booking Agreement.*

MSC claims it is entitled to summary judgment because Masse agreed, both in the Passage Contract and in the Booking Terms and Conditions, that he would be solely

responsible for monitoring his own alcohol consumption, and that MSC shall have no liability to Masse as a result of Masse's alcohol consumption because of the application of the reverse dram shop law.

On this issue, although not raised by Masse, this Court is compelled to point out that to the extent MSC claims it is not liable for Masse's claim that it is negligent because of a waiver of liability provision in its booking agreements, such a claim fails under 46 U.S.C. § 30527(a)(1), which provides:

> (1) In general. The owner, master, manager, or agent of a vessel transporting passengers between ports in the United States, or between a port in the United States and a port in a foreign country, may not include in a regulation or contract a provision limiting—
> (A) the liability of the owner, master, or agent for personal injury or death caused by the negligence or fault of the owner or the owner's employees or agents; or
> (B) the right of a claimant for personal injury or death to a trial by court of competent jurisdiction.

46 U.S.C. § 30527(a)(1).

"This statutory prohibition applies to passenger cruise ship companies attempting to disclaim or limit their liability for injuries to passengers based upon their own negligence." *Smolnikar v. Royal Caribbean Cruises Ltd.*, 787 F. Supp. 2d 1308, 1316 (S.D. Fla. 2011) (Jordan, J.) (citing *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1335–36 (11th Cir. 1984)). Under § 30527(a), MSC is prohibited from disclaiming liability caused by its own negligence or fault or that of its employees. Thus, MSC is not entitled to summary judgment to the extent it seeks to avoid liability for its own negligence based on the terms of its booking agreements, including terms of its booking agreements that purport to limit MSC's liability based on the Florida dram shop law, which MSC only argues applies based on its attempt to contractually disclaim or limit its liability.

3.  <u>Whether Masse Waived His Claims Based On His Testimony That He Was Solely Responsible For The Amount Of Alcohol He Consumed.</u>

MSC points to Masse's deposition testimony as evidence "that no one else was responsible for the amount of alcohol he consumed on the night of the incident." Mot. at 2. While Masse's testimony alone does not absolve MSC from all liability that might possibly result from the overservice of alcohol, the undersigned agrees with MSC that Masse's deposition testimony seriously undermines his theory that his injury resulted from a breach on MSC's part, directly or vicariously, and finds that this uncontradicted testimony forecloses Masse's ability to argue that MSC may be vicariously liable for his injuries. Masse testified as follows:

> Q: Would you agree that an individual that's drinking alcohol, it's their responsibility to know when they should stop?
> A: Yes.
>
> Q: And that's something you know before the cruise as well as knowing today, correct?
> A: Yes.
> . . .
> Q: And you're the one who is responsible for how much alcohol you drank on the cruise, nobody else, right?
> A: Yes.
> . . .
> Q: Do you blame any specific employee of the cruise ship for what happened to you?
> A: No.

[ECF No. 20-1 ("Masse Dep.")] at 61:25-62:6; 112:11-14; 120:3-5.

One of Masse's theories of liability is that MSC's employees are responsible for his overconsumption of alcohol to his detriment—the vicarious liability theory. When the tortfeasor is an employee, the principle of vicarious liability allows "an otherwise non-faulty employer" to be held liable "for the negligent acts of [that] employee acting within the scope of employment." *Langfitt v. Fed. Marine Terminals, Inc.*, 647 F.3d 1116, 1121 (11th Cir. 2011)

(citation omitted). In other words, liability for the agent's negligence is legally imputed to the non-negligent principal. *See Meyer v. Holley*, 537 U.S. 280, 285–86 (2003) ("The principal is liable for the acts and negligence of the agent in the course of his employment, although he did not authorize or did not know of the acts complained of." (quoting *New Orleans, M. & C.R. Co. v. Hanning*, 82 U.S. 649, 657 (1872))).

The vicarious liability theory is, however, directly contradicted by Masse's above-cited testimony. *See Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 43 (2d Cir. 2000) ("[I]n opposing summary judgment, a party who has testified to a given fact in his deposition cannot create a triable issue merely by . . . denying the fact."); *see also Kernel Records Oy v. Mosley*, 694 F.3d 1294, 1299 n.6 (11th Cir. 2012) (district court may disregard a summary judgment affidavit as a sham when a party to the suit files an affidavit that contradicts, without explanation, prior deposition testimony on a material fact). In light of Masse's deposition testimony that he alone is responsible for the amount of alcohol he drank on the cruise and that *no* employee of MSC is to blame for the injury, Masse cannot now create a genuine issue of material fact by arguing otherwise in his Response to the Summary Judgment Motion. At a minimum, to the extent Masse's negligence claim is based on a theory that MSC is vicariously liable based on its employees serving him too much alcohol, he has not demonstrated a genuine issue of material fact on this claim because he admits that no MSC employee was responsible for his overconsumption of alcohol.[5] The Motion is therefore due to be granted as to Masse's claims for vicarious liability based on the overservice of alcohol. *Accord Johnson v. Carnival Corp.*, No. 07-20147-CIV, 2007 WL 9624457, at *3 n.6 (S.D. Fla. Dec. 11, 2007) (Ungaro, J.) (explaining

---

[5] Separately, Masse's failure to identify any specific MSC employee dooms this theory in any event. *See Yusko*, 4 F.4th at 1170.

that "the passenger, not the ship owner, is in the best position to monitor his/her level of intoxication").

This leaves Masse's theory of direct liability for the overservice of alcohol, which the Court addresses below.

    4.   <u>Whether There Is A Genuine Issue Of Material Fact As To Whether MSC Was On Notice Of Masse's Dangerous Intoxication.</u>

The elements of a negligence claim based on a shipowner's direct liability for its own negligence are well settled: "a plaintiff must allege that (1) the defendant had a duty to protect the plaintiff from a particular injury; (2) the defendant breached that duty; (3) the breach actually and proximately caused the plaintiff's injury; and (4) the plaintiff suffered actual harm." *Franza v. Royal Caribbean Cruises, Ltd.*, 772 F.3d 1225, 1253 (11th Cir. 2014) (quoting *Chaparro*, 693 F.3d at 1336). As discussed above, "a shipowner owes the duty of exercising reasonable care towards those lawfully aboard the vessel who are not members of the crew." *Guevara*, 920 F.3d at 720 (quoting *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 630 (1959)). This standard requires a plaintiff to prove that the carrier have had actual or constructive notice of a risk-creating condition when, as here, the condition is one commonly encountered on land and not clearly linked to "nautical adventure." *Id.* (quoting *Keefe*, 867 F.2d at 1322); *see also Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1334 (11th Cir. 1984) (explaining that a shipowner "is not liable to passengers as an insurer, but only for its negligence").

Thus, to the extent Masse seeks to hold MSC liable based on a theory of direct negligence, Masse must establish that MSC had actual or constructive knowledge of the dangerous conditions, that is, his state of intoxication—since overservice of alcohol and a

drunken fall from a balcony is a hazard that is not unique to being at sea. *See Keefe*, 867 F.2d at 1322.

### Actual Notice.

Masse does not argue that MSC had actual notice of his dangerous intoxication. *See generally* Response. More importantly, his deposition testimony directly contradicts any notion that MSC did have actual notice of his condition:

> Q: Was there ever a time during the cruise where anybody told you, . . . maybe you should slow down, you're drinking a little too much?
> A: No. . . . I'm saying no off of the strength that if I do start getting too much, I start probably acting wild and doing all that, and I really wasn't doing that . . . . I was chilling . . . . I don't think anybody really looked at me and was like, he's drinking too much, like, he's wobbling . . . . I maintained my composure throughout the week [and] really didn't give people a reason to have to ask me those questions. . . .
> Q: So if I walked into the bar and saw you sitting there with your girlfriend, you know, and I'm looking at you, am I going to have any way to know that you're drunk?
> A: No. You're just going to look at my like that's a guy . . . having a drink with his girl . . . .
> Q: Nothing -- nothing that would have stood out?
> A: No. No. No.

Masse Dep. at 57:16-58:7; 58:21-59:2; 59:5-7.

Accordingly, and based on Masse's own testimony, this Court finds that there is no genuine issue of material fact as to whether MSC had actual notice of Masse's dangerous intoxication, but, instead, the evidence establishes that it did not.

### Constructive Notice.

To survive summary judgment based on a theory of constructive knowledge, Masse must present facts demonstrating that his state of dangerous intoxication was obvious. *See Hall v. Royal Caribbean Cruises, Ltd.*, 888 So. 2d 654, 654 (Fla. 3d DCA 2004) (finding that a complaint stated a cause of action against a cruise ship where the passenger alleged that he

was *obviously* past the point of intoxication and unable to look after himself).[6] What's more, not only must this intoxication be obvious, but it also must be apparent that the intoxication is to such an extent that the individual is in imminent danger. *See Broberg v. Carnival Corp.*, 798 F. App'x 586, 590 (11th Cir. 2020) (finding that "the district court properly framed the question as whether Carnival was on notice that [decedent] was intoxicated to the extent that she was in danger" in considering a maritime negligence claim based on over service of alcohol).

To the extent Masse claims that MSC is liable because it was on constructive notice that he was dangerously intoxicated but continued to overserve him, as MSC points out, the record evidence is devoid of evidence that Masse's intoxication should have been obvious *at the time* MSC was serving him drinks, much less that it was *obvious* that he was dangerously intoxicated. Masse appears to present an alternative theory of liability, that MSC should have known that he was intoxicated because his behavior outside of the ship's bars indicated that he was intoxicated. On this point, Masse has offered evidence that he fell asleep at dinner and that he was "swaying" around the hallways. While the undersigned doubts that these facts alone obviously confer the inference that Masse was intoxicated, when the facts are construed in the light most favorable to Masse, it is possible that a reasonable jury could find that falling

---

[6] While Masse argues that "there is no basis for the application of Florida law," Resp. at 9, he also cites Florida law himself. In fact, he cites this very case. *See id.* This Court considers Florida law persuasive in instances where federal maritime law does not specify a particular and relevant legal principle. *See Coastal Fuels Mktg., Inc. v. Florida Express Shipping Co.*, 207 F.3d 1247, 1251 (11th Cir. 2000) ("[W]hen neither statutory nor judicially created maritime principles provide an answer to a specific legal question, courts may apply state law provided that the application of state law does not frustrate national interests in having uniformity in admiralty law.").

asleep at the dinner table and swaying or staggering around hallways may have been sufficient to put MSC on notice that Masse was obviously intoxicated.

However, that is still not enough to confer liability on MSC under a constructive notice theory. The mere observance of a state of intoxication is not itself sufficient to confer liability upon a cruise ship for any resulting injury. *See Broberg*, 798 F. App'x at 590. Masse must also demonstrate that his intoxication was apparent to the extent that MSC should have known that he was in danger or could be at risk of doing something dangerous, like going out onto his balcony in the early morning and either falling off (or, what seems more likely here) attempting an ill-advised jump.

In *Broberg*, after a bench trial, the district court concluded that although there was evidence which showed that the decedent had appeared "tired and . . . somewhat-intoxicated," the cruise line "was not on notice that [the decedent] was intoxicated to the point of being in danger." *Broberg*, 798 F. App'x at 589. This conclusion, affirmed by the Eleventh Circuit, was predicated on the finding that the cruise line's employees testified that "when they observed [the decedent] in the last hour before she fell overboard, she was not visibly intoxicated." *Id.* at 590. Here, although Masse has offered limited evidence of his intoxication outside of the bars where he was served alcohol, as well as evidence that he appeared tired and somewhat intoxicated after a day of drinking, he has not shown how his intoxication was sufficiently apparent such that MSC's bartenders and employees should have been on notice that he was in danger. Again, Masse's own testimony, discussed above, belies any claim that MSC's staff should have been on notice that Masse was intoxicated to a dangerous degree. *See* Masse Dep. at 57:16-58:7; 58:21-59:2; 59:5-7 ("I don't think anybody really looked at me and was like, he's drinking too much, like – he's wobbling . . . . I

maintained my composure throughout the week really didn't give people a reason to have to ask me those questions.").

Accordingly, viewing the evidence in record in the light most favorable to Masse, although there is barely sufficient evidence in the record for a jury to conclude that Masse's intoxication was at some point in the day obvious and, therefore, perhaps should have been noticed by MSC, there is a lack of any evidence in the record for a reasonable jury to conclude that MSC should have observed that Masse's intoxication was so pronounced that he was a danger to himself. *See Taiariol v. MSC Crociere, S.A.*, No. 0:15-CV-61131-KMM, 2016 WL 1428942, at *4–5 (S.D. Fla. Apr. 12, 2016) (Moore, J.), *aff'd,* 677 F. App'x 599 (11th Cir. 2017) ("Courts have also found that at this stage of disposition, 'mere implication of actual or constructive notice is insufficient to survive summary judgment.'" (quoting *Lipkin v. Norwegian Cruise Line Ltd.*, 93 F. Supp. 3d 1311, 1323) (S.D. Fla. 2015) (Williams, J.)); *Adams v. Carnival Corp.*, No. 08-22465-CIV, 2009 WL 4907547, at *5 (S.D. Fla. Sept. 29, 2009) (Seitz, J.) (finding plaintiff needed "specific facts" rather than "mere implication" to demonstrate notice).

Therefore, Masse's direct negligence claim based on a theory of constructive notice of dangerous intoxication cannot survive summary judgment.

5. <u>Proximate Cause.</u>

Although the Court has already determined that none of the three categories of liability alleged by Masse presents a genuine issue of material fact, this Court also addresses an additional, redundant reason why Masse's claims necessarily fail.

In order to prove MSC is liable to Masse for negligence, whether based on a theory of direct or vicarious liability, Masse must also establish that MSC's breach of its duty of

reasonable care was the proximate cause of his injury. *See Lipkin*, 93 F. Supp. 3d at 1324; *John Morrell & Co. v. Royal Caribbean Cruises, Ltd.*, 534 F. Supp. 2d 1345, 1353 (S.D. Fla. 2008) (Altonaga, J.). Masse has failed to advance facts which could support a finding of proximate cause with regard to MSC's role in his injuries.

### *Masse's Drug Use.*

Masse testified that he was smoking marijuana in the hours before the incident in question. Masse does not challenge or respond to MSC's assertion that "[a]t the time of the incident Mr. Masse had a combination of marijuana, fentanyl and alcohol in his blood stream." Mot. at 1.  As discussed above, "when a party fails to respond to an argument or otherwise address a claim, the Court deems such argument or claim abandoned." *Jones v. Bank of Am., N.A.*, 564 F. App'x 432, 434 (11th Cir. 2014) (quotation marks omitted)).

Masse advances no argument that MSC could or should have been on notice of his illegal drug use, and no account for how the overservice of alcohol could still be considered a viable proximate cause of his injuries in these circumstances.[7]

Florida law is clear that proximate cause may be broken when an actor voluntarily intoxicates themselves with a powerful drug.[8] *See Grieco v. Daiho Sangyo, Inc.*, 344 So. 3d 11,

---

[7] There is also evidence that Masse tested positive for fentanyl. Although Masse does not address fentanyl in his briefing nor in his Statement of Material Facts, this Court must draw all inferences in favor of the non-movant, and accordingly has considered the possibility that Masse tested positive for fentanyl after his injury as a result of being provided with painkillers on a medical basis for his injuries. MSC does not challenge Masse's statement at his deposition denying knowingly consuming fentanyl, despite evidence that paramedics transporting him to the hospital had to revive him with Narcan. *See* Mot at 10 n.2. In any event, given the lack of clarity regarding Masse's fentanyl use, this Court bases its findings in this area upon Masse's admitted use of marijuana alone.

[8] This Court turns to state law here based on guidance from the United States Supreme Court. *See Exxon Co., U.S.A. v. Sofec, Inc.*, 517 U.S. 830, 839 (1996) ("In ruling upon whether a defendant's blameworthy act was sufficiently related to the resulting harm to warrant

24 (Fla. 4th DCA 2022) (finding that "even where an actor's conduct creates a dangerous situation, the law will not allow a jury to find proximate cause where an unforeseeable, intervening act [here, drug use] is responsible for the injuries") (citing *Dep't of Transp. v. Anglin*, 502 So. 2d 896, 898 (Fla. 1987)). Here, Masse provides no account explaining how a jury could conclude that it was MSC's overservice of alcohol, and not Masse's consumption of a powerful drug (or perhaps two), that caused the fall. Even if he had presented evidence sufficient to create a genuine dispute as to whether MSC negligently overserved him— evidence sufficient to overcome his own testimony that MSC's employees are not responsible for his overconsuming alcohol to his detriment—Masse has not offered any evidence to show that his fall resulted from excessive alcohol consumption alone. Thus, even if a jury were to find that the alcohol was a contributing factor to his fall, this Court finds that the undisputed evidence of Masse's having knowingly consumed marijuana less than 12 hours before his fall, and that he tested positive for marijuana at the hospital, precludes him from establishing the proximate cause necessary to hold MSC liable for his injuries.

Accordingly, this Court concludes that Masse's direct negligence claim also necessarily fails due to evidence of his drug use, which precludes a finding of proximate cause.[9]

---

imposing liability for that harm on the defendant, courts sitting in admiralty may draw guidance from, *inter alia*, the extensive body of state law . . .").

[9] Although MSC does not pay significant attention to it, there is also evidence in the record that Masse intentionally jumped, rather than fell, from his balcony. *See* ECF No. 23-2 at 5. While there is not sufficient evidence to conclude there is no genuine material dispute on this issue, this Court notes for the sake of completeness that had Masse indeed jumped as the record evidence seems to suggest, this intentional act would certainly break any chain of proximate cause that could lead to liability for MSC anyway. *See, e.g.*, *Rafferman v. Carnival Cruise Lines, Inc.,* 659 So. 2d 1271, 1273 (Fla. 3d DCA 1995).

6.  <u>MSC's Service Of Multiple Drinks At A Time.</u>

Finally, this Court addresses an argument advanced by Masse, who focuses much of his Response on the argument that MSC served him multiple drinks at a time in apparent contradiction of the written terms of MSC's beverage package and of an employee bar training manual. Masse argues that "[a]s a result of the multiple drinks on each ticket, Defendant was creating a dangerous condition." Resp. at 7. Masse cites *International Brotherhood of Electrical Workers, AFL-CIO v. Hechler*, 481 U.S. 851 (1987), for the proposition that "[w]hen the Defendant's duty is established by contract, the threshold inquiry for determining whether a cause of action exists is on examination of the contract to ascertain what duties were accepted by each of the parties and the scope and extent of those duties." *Id.* Accordingly, Masse appears to argue that this issue goes to whether MSC breached its duty to him, based on its violation of the written terms of the beverage package and upon the employee training manual.

In accord with *Hechler*, this Court has conducted a threshold inquiry to ascertain what duties were accepted by each of the parties, assuming *arguendo* there even was a contract between the parties on this issue in the first place. While the undersigned agrees that "all alcohol consumption on the Defendant's cruise was controlled by the Defendant because they were in sole control over how alcohol was disbursed to passengers," Resp. at 7, the undersigned does not agree that a rule limiting how many alcoholic drinks passengers are permitted to order at one time, even if included in a contract between the parties, created a duty that MSC was itself bound to follow. Masse cites no authority for the proposition that MSC's failure to enforce its internal policies for the general benefit of a passenger would confer a duty that could be breached. And neither does this Court see how the act of an employee

violating an internal training manual confers a contractual duty either, as Masse never agreed to any provisions of the employee training manual as a binding contract. It is not clear Masse even knew about the manual, much less agreed to its terms.

And even if MSC's duty not to serve multiple alcoholic drinks at once were somehow created by contract, it is not clear to this Court how the service of two drinks at once could constitute overservice of alcohol that would by itself create a dangerous condition. There is evidence in the record that Masse requested multiple drinks for himself and for others (particularly, his girlfriend). Masse fails to cite any authority standing for the proposition that liability for overservice of alcohol attaches due to mere quantity of alcohol being served, as opposed to liability attaching based on the service of alcohol to an obviously intoxicated person who is intoxicated to the extent that the person is a danger to himself, herself, or others. Masse also fails to advance any evidence which would show that MSC's bartenders knew or should have known that he would be consuming all of the alcohol they served him, as opposed to his sharing it with his girlfriend, girlfriend's sister, and cousin—which he indeed appears to have done. The record instead suggests that Masse often (or always) presented bartenders with both his and his girlfriend's identification cards, in addition perhaps to the identification cards of others. The record therefore supports a finding that MSC's bartenders reasonably believed they were serving multiple drinks to multiple people.

The question here is not whether MSC served Masse too many units of alcohol at one time. To quote an authority relied upon by Masse, the question here is instead whether MSC "acquired knowledge of [Masse's] physical condition and apparent state of mind," and then failed "to identify him to the other crew members as being a guest who presented a substantial risk of injury to himself." *Palmer v. Ribax, Inc.*, 407 F. Supp. 974, 980 (M.D. Fla. 1976).

Therefore, as discussed above, what is relevant is whether any bartender served Masse after Masse's dangerous physical condition/state of mind became apparent, and to what extent crewmembers should have taken action after Masse's dangerous level of intoxication became actually or constructively apparent. As this Court explained above, there is insufficient evidence in the record for a reasonable jury to conclude that MSC was on notice of Masse's dangerous physical condition and/or his dangerously intoxicated state of mind. Accordingly, because there is no evidence that any bartender served Masse after Masse's dangerous condition became apparent (because there is no evidence that the danger presented by his intoxication ever became apparent, even constructively), the quantity of alcohol bartenders served Masse at any particular time is only, at most, tangentially relevant.

Accordingly, this Court rejects Masse's argument that MSC created a dangerous condition as a result of serving multiple drinks on a single ticket, even if such service violated the terms of MSC's internal policies.

## V. CONCLUSION

In sum, for the reasons explained above, Masse has failed to demonstrate a genuine issue of material fact as to whether MSC is directly or vicariously liable based on any of the theories asserted in the Complaint. Therefore, based on a review of the record evidence in the light most favorable to Masse, this Court concludes that MSC is entitled to judgment as a matter of law. Accordingly, is hereby

**ORDERED AND ADJUDGED** that Defendant's Motion for Summary Judgment **[ECF No. 18]** is **GRANTED**. A final judgment will be entered separately consistent with this Order.

The Clerk of Court shall **CLOSE** this case. Any pending motions, including Defendant's *Daubert* Motion [ECF No. 21] and Omnibus Motion *in Limine* [ECF No. 29], are **DENIED AS MOOT**.

**DONE AND ORDERED** in Chambers in the Southern District of Florida this 10th day of October, 2025.

**MELISSA DAMIAN**
**UNITED STATES DISTRICT JUDGE**